Good morning, your honors. My name is Walter Cochran Bond. I represent the plaintiff class. In this matter, with me today is my co-counsel and co-counsel for the class, Michelle Ryan class. All right. Are you going to be making the argument? I am going to be making the argument. All right. And you have 20 minutes for your side. I'd like to reserve seven minutes for a rebuttal. All right. I'll try to remind you of that, but you're in charge of keeping time. Okay. There's one central issue that's before you here today, and that is whether the consent decree requires the registration of those longshore workers who work primarily as mechanics in counting to determine whether the goals set forth in the consent decree have been met. And that is the one central issue because it determines not only whether there has been a substantial violation of the consent decree, but it also determines whether or not there has been a material misrepresentation that would cause the 1989 release to be subject to rescission. Moreover, these two issues are intertwined with each other because if this court finds that the mechanics are to be counted in determining the goals, that that has a bearing then on the materiality issue, that issue should be remanded to the district court for a new determination on materiality. Well, essentially the bottom line was the contempt, right? The bottom line was... Well, that you lost on the contempt issue, correct? The court made a final determination that yes, in fact, there was not a contempt shown here. And that would generally be an abuse of discretion, but you need to basically show that the court erred legally in order to show that abuse of discretion. Would that be a correct assessment? That's correct. Because an abuse of discretion is always an uphill battle for an appellant, I'm sure that you're aware, unless you can show that the court made a legal error. Right. Well, there are legal errors here, and they're too cold. One has to do with the interpretation of the consent decree itself. And when you're dealing with an interpretation of a consent decree, this court, in fact, has de novo powers to make that interpretation, just as if this court were interpreting statute or interpreting a contract. Also, there was legal error when the court relied on the concept of mutual intent as having application to a consent decree. Basically, importing that kind of contract theory into a consent decree, which the United States Supreme Court has very clearly stated in United States v. Armour, has no application. But let me begin by focusing on the interpretation of the consent decree. There are two paragraphs in that consent decree that are absolutely essential to a proper interpretation of the consent decree, and as it applies especially to the registration of mechanics. The first one is paragraph 12. And it's extremely telling that the district court did not even reference paragraph 12 in its decision. And I submit respectfully that if it had, it could not have reached the conclusion that it did. Paragraph 12 deals with many of the issues that this court, the district court, had problems with. It states, all persons who become registered longshore workers at the port, all persons who become registered longshore workers, whether by new registration, by transfers, or by any other procedures, shall be counted in determining whether the goals are met. Tell me where in the consent decree there's a definition of a longshore worker. In the consent decree, there is a provision of paragraph 19, and that's the other critical paragraph to be focused on here. Does it define longshore worker, though? Paragraph 19 incorporates the collective bargaining agreement, which has a definition of longshore man, which is the equivalent of longshore worker, longshore worker merely being a gender neutral. So it's not in the actual consent decree. You have to, by your theory of incorporation, to this other document. Right. But what is in the consent decree is the reference to the collective bargaining agreement. The district court said that there was also somehow a reference to the complaint, and then looked to the complaint as being a possible reference point for the definition of a longshore worker as well. However, paragraph 19 is very clear. In paragraph 19 states that the provisions of the relevant collective bargaining agreement shall apply fully to this decree in the implementation thereof. And the collective bargaining agreement that's relevant here, the longshoreman collective bargaining agreement, does have a definition of longshoreman. And it's a definition that is extremely consistent with what the entire consent decree is all about. Indeed, it's consistent with what the allegations were in the complaint that the court found some inconsistency. And I'll explain that. Let me go first to the point by the district court that there is some ambiguity because somehow the definition in the complaint is different than the definition in the collective bargaining agreement. In the complaint, what is referred to and what is relied on by defendants is a statement where we're describing who Local 13 is. And the statement is the longshore job involves the loading and unloading of cargo from shipment to and from the port. Okay? If you look at the collective bargaining agreement at section 1.1, almost the identical language or concept that's there, it says that this collective bargaining agreement covers all movement of cargo on vessels or loading to and discharging from vessels of any type and on docks or to and from railroad cars and barges at docks is covered by this contract document and all labor involved therein is assigned to longshoremen as specified in section 1. Section 1 includes two provisions that refer specifically to mechanics, section 1.7 and section 1.71. That was admitted by the persons most knowledgeable presented by both PMA and by the unions at deposition, Mr. Charles Young and Mr. Tom Hebert, that in fact those sections apply to mechanics. Mechanics have sort of a different way of getting their work than the other people that were counted. They have a different way of getting their initial job, but they are registered in the same way. And what is dealt with in the goals in the consent decree and what is dealt with in the definitions of longshoremen is who is registered as a longshore worker, not how they were hired. In fact, if you look at paragraph 12 of the consent decree, it very specifically deals with that issue because it says registered no matter what way they're registered, whether it's by new registration, by transfer or other means. In other words, it doesn't matter how that registration took place. It doesn't matter how those people were initially hired. What we bargained for in the consent decree and have a specific provision in the consent decree is that all registrations are to be counted in the goals. That includes mechanics. It includes all the other job categories. I think one of the most fascinating documents that we have before the court is the 1981 annual report by PMA because in that annual report, and it's found at volume one, page 224 of the excerpt of record, it lists 29 different job categories at PMA that are part of the longshoremen definition. It includes mechanic, but it includes 28 other different job categories. Let me ask you this question, though. The district court obviously felt that the language is ambiguous, and this is a judge that's been dealing with both parties for, what, 24 years? Longer than probably some people, older than some of our law clerks probably. But if we don't agree with you, if we feel that the language is ambiguous, as the district court did, is there a way you can still prevail? You have to convince us, in order for your theory to prevail as an appellant, is it necessary for us to feel the language is, go against the district court and feel that it's clear? Well, let me answer this this way. First of all, I don't see the ambiguity. I don't believe there's any ambiguity. But if we think it's ambiguous, can you prevail? Is there a theory under which you can prevail? The theory is more as how you get to that point. If it is truly ambiguous and there are not ways to understand what the true meaning is, through proper interpretation like you do of any statute or any contract, which is what we're urging this court to do and what we feel the district court did not do, then, yes, if it's truly ambiguous, then there will have to be an interpretation of what the consent decree is all about. What they're asking here is, because they think it's ambiguous, not going through a rigorous determination of what the terms of the consent decree mean, but because they felt it was ambiguous, that they're able to not then comply with that term in a consent decree. You can't have consent decrees being treated in that manner by a party that's subject to a consent decree. You have to look within the four corners of the document and see whether the ambiguity exists within the four corners of that document. And the four corners of this document include paragraph 12, which I submit can't be any clearer, that all registrations are to be included. It includes paragraph 19, which incorporates the collective bargaining agreement, which very clearly has a definition of longshoremen, and which also has a provision at 8.31 that says every port shall have a list of people who are registered longshoremen. And we have an admission by the person most knowledgeable, Tom Hebert, that the mechanics are on that list as registered longshoremen. So there's no ambiguity. If you look at the evidence we put before this court, consistently there has been the same application of who is and who is not a longshoreman, and consistently mechanics have been seen to be longshoremen. In fact, the district court found that below, not here on appeal, but below it was conceded by the defendants that mechanics were registered longshoremen. What the court below didn't do was focus on paragraph 12. Nowhere to be found. But the court in finding that found that the parties, that there was a problem with what they intended when they entered it. Is that correct? Yeah, that's where the legal error is, Your Honor, that the party's intentions are not to be considered in the context of a consent decree. If we were talking about a contract and there was no meeting of the minds, it may be that it would be subject to rescission. But what would the result be there if that were to apply here? That would be a rescission of the entire consent decree, and we'd be litigating the case which when we started out there were six women as registered longshoremen. There was one woman as a registered marine clerk. Is that where we need to go based on this theory? I think not. We have a consent decree. The consent decree resolves the case. It's an order of the court. The intention of the parties may have been an oddity with each other. Our intent was that all registrations be covered. Our intent is reflected in paragraph 12. If they had a different intent, they could have added to paragraph 12 except for onshore mechanics. You're at seven minutes if you want to reserve. I'll reserve this. Thank you. May it please the Court. My name is William Kilberg. I represent the Defendant Pacific Maritime Association. With me today is Mr. Robert Remar, who is counsel for the ILWU. I will address the mechanics issue. Mr. Remar will address the plaintiff's other three counting arguments and the question of release. I'd like to reserve eight minutes of my time for Mr. Remar. Well, the only problem that we've had in these is you only have 20 minutes altogether. You know that. And then other people glare at you from the table when you go over your time. We've had that problem that people thinking that they each have 20 minutes or something along those lines. So how long are you going to take? I'm going to take 12, and Mr. Remar will take eight. All right. Okay, I got it. I'll try to notify you on that, even though we don't like to keep track of time. But I don't want to see his looks over there when you're going over your time. I'll do my best. I'll be able to feel them in the back of my head. The defendants have successfully remedied the gender disparity in the Longshore workforce that was the subject of the Title VII complaint that was brought in 1980. It was the alleged disparate impact on women in defendants' procedures for registration and dispatch to Longshore jobs, which resulted in the consent decree that is at issue here now. There were six registered women Longshore workers in 1983 when the decree was approved. Well, isn't their theory of the contempt, though, more to the fact that they didn't do it on time, and therefore these individuals, if they had kept on schedule, then these individuals would have been making more money and had additional benefits all during that period of time. So assuming that they eventually got where they were supposed to, that isn't really the gist of their contempt, is it? Actually, it has to be part of their contempt. I mean, in order for them to show contempt, they have to show by clear and convincing evidence that we have violated a specific and definite provision of the decree and are not in substantial compliance with the decree. Well, I guess that would be something for the court to consider if that, in fact, did occur. Did the court abuse its discretion? That's correct. And the court below, our position is that the court below was within its discretion to find that, having lived with the decree for, as you indicated, 24 years, that the part that we were, that there was some ambiguity in the decree as to whether mechanics were or were not covered. Therefore, the plaintiffs cannot show, by clear and convincing evidence, that there was a specific and definite provision of the decree and that we are in substantial compliance with the decree. And that's my point, that after 15 years of the decree in 1998, you had 635 women longshoremen as compared to six at the outset. The decree's purpose has been achieved. And now, after the decree has terminated, plaintiffs are asking the court to ignore this record of substantial compliance and look back more than a decade to the interim provision of the decree that you referenced. They argue that that provision should have been calculated by reference to mechanics. But that's a job that plaintiffs never addressed in the underlying Title VII litigation. And as the decree itself says, it was negotiated and settled specifically on the basis of the amended complaint. Indeed, even if the decree hadn't said that, one would typically read a complaint into a consent decree in order to understand what the meaning of a consent decree is. After all, the consent decree is settling the issues that were raised in the complaint. Are you still, I'm sorry, go ahead. Well, there's nothing that requires mechanics to be masculine, is there? There's nothing that requires mechanics to be masculine. That's absolutely right, Your Honor. And if they weren't in contempt technically, shouldn't further efforts be made to better the mechanics statistics? Mechanics were never an issue in this case. They were not an issue at the outset. The plaintiffs never complained about admission of women into the mechanics ranks. They didn't do so at the complaint stage. They didn't do so at the consent decree stage. They're not doing so today. What plaintiffs are trying to do is to add mechanics to the denominator of the number set in the interim provisions of the decree. Which interim provisions have, in fact, been met. But they're arguing they weren't met quickly enough. And they're trying to reopen the decree now in order to change those provisions. You have filed a 28-J with us on the Golden case. I'm not sure it was a 28-J. There is a motion to strike that we have. Are you familiar with this Golden case? This is the Golden case. This is the Golden case. What I'm looking at, this is the Richard Anderson case versus Pacific Maritime. And on page 9685, it states this. This is the holding in the case. PMA was not the one illegally discriminating. PMA did not exercise control over the waterfront work environment that the plaintiffs claimed was hostile. Does the holding that I've just read apply to this case, too? I understand the case you're referring to, Your Honor. PMA, in this case, PMA was, with the ILWU, is responsible for the registration of longshoremen. With regard to mechanics, of course, mechanics are not registered in the same way that longshoremen are registered, or longshore workers. Mechanics become automatically registered when they're hired by the stevedoring company. So as in the Anderson case, PMA would have nothing to do with the actual hiring of the mechanic, nor would PMA have anything to do with the registration of the mechanic, because the mechanic becomes registered. And for our purposes, registration means entitled to the benefits in the collective bargaining agreement, the health benefits, the welfare benefits, pension benefits, and so on. Are you still contending that the general release entirely bars plaintiffs for the motion for contempt? Yes. All right. So that's still part of your case. That's still part of our case, Mr. Remar. Don't spend a lot of time on that. Just move on to the rest. But I was wondering if that was still part of your hearing. It is. And Mr. Remar will address it. Let me just say quickly, the plaintiff's complaint was addressed entirely to alleged discrimination in the operation of the dispatch hall. You can look at Paragraph 3. You can look at Paragraph 5, Paragraph 6 of the complaint. These things do not refer to mechanics. Mechanics do not receive their work, as I just indicated, out of the dispatch hall, and defendants do not control what maintenance and repair jobs mechanics receive. These matters are matters for the individual stevedoring company. If we agree with you that the language is ambiguous, is there any way that the appellant can prevail from your standpoint? No. Absolutely not. Absolutely not. The standard in this circuit, in Vertex and in GoVideo, is really quite clear. The plaintiff's reference to armor is a misreference. The armor case is consistent with, obviously, Supreme Court decision, consistent with the rulings of the Ninth Circuit, because what armor is saying is that for a plaintiff to show that another part of a defendant is guilty of civil contempt, the plaintiff must show within the four corners of the agreement that there is, by clear and convincing evidence, specific and definite language which the defendant has violated. It makes sense. You're trying to show a violation of a court order. A defendant, however, may look outside the four corners of the agreement, certainly as the rule in California interpretation of contracts where extrinsic evidence is admissible, to show that language, in fact, is not specific and definite. In this case, we would argue that the complaint, rather, is not outside the four corners of the agreement. It's incorporated into the agreement by language in the agreement and, frankly, by common sense interpretation of any consent decree. Let me talk for a minute about the collective bargaining agreement, because the plaintiff's position with regard to the collective bargaining agreement, I think, misconstrues the language in the consent decree. It is not surprising that in the settlement of an equal employment lawsuit, you have a consent decree which, by the very nature in a collective bargaining situation, is going to impact the collective bargaining agreement that you would have a savings clause in the consent decree seeking to save the rest of the collective bargaining agreement from alteration. That's what you have here. The language that the plaintiff cites in paragraph 19 has to be read in its entirety. It says the collective bargaining agreement continues to apply fully under the decree, except as is required to achieve compliance with the goals and other provisions of the decree. In other words, the collective bargaining agreement is unaffected, except as is necessary to comply with the goals. It does not mean that the collective bargaining agreement is incorporated in toto. If it were, it would be ridiculous, because that would mean that any violation of the collective bargaining agreement could be enforced by civil contempt. Clearly, that's not what the parties intended. Where I am in my time. Well, you're a little over nine minutes. Well, in that case, let me leave my time, the rest of my time, for Mr. Remar. All right. Thank you. Thank you very much. Good morning. Good morning. I'm Robert Remar. I'm prepared to talk about the release, but before I do that, I just want to cover a few points with respect to some of the issues that have been discussed already. The threshold question here is really a definitional one. Does the consent decree provide a specific and definite definition as to registered longshore workers? Who's in that universe? Who's in that group in the class? It's undisputed that the consent decree contains absolutely no definition of that. The consent decree does refer specifically to the first amended complaint as the basis on which the decree was negotiated. That complaint does give us a window into the definitions here. It describes who the people are that are to be covered in this universe within the decree. It describes people as being those that perform the work of loading and unloading the ships that are assigned through the dispatch hall. Mechanics do not fit that definition. We also have an additional window or lens in which to inform us about the definition of the universe or the scope of the class here, and that is the consent decree itself in paragraph 27 in particular. In that paragraph, it talks about what the parties were focusing on with respect to the types of procedures, the types of criteria, types of people that would be covered in the decree. And it describes the process with regard to group registrations of longshore workers, the type of workers that are described and defined in the complaint as those doing the loading and unloading. It talks about the process of through the hiring hall in which we have, it uses the phrase in paragraph 27, periods of registration. That's with regard to people that perform loading and unloading work, the general unskilled basic longshore work that the complaint was focusing on and the decree focuses on. With regard to mechanics, we do have in the stipulation of 1989 that dealt with claims of shortages and shortfalls of the goals in the decree, a reference to mechanics. And the reference is to exclude them. In that stipulation, the parties agreed to provide certain remedies in exchange for the settling and the release of claims regarding shortages and shortfalls. And in the release and in the settlement, there were provisions that granted up to 100 class members registration, approximately 65 men who were non-members, of course, also registration. It provided in the stipulation that all these people, approximately 165, 168 people, are to get retroactive seniority. And in the longshore industry, the way you get seniority is by your hours credits. So there's a formula that's set out in the 1989 stipulation on the granting of the hours credits. And the formula specifically excludes mechanics. You can find this on SCR, that's the appellant's supplemental, excuse me, our supplemental excerpt of record. You can find this at 39, page 39, and I'm referring to paragraph 3 of the 1989 stipulation. And the reference is on line 7 of SCR, page 39, excluding mechanics. That tells us several things. It tells us the parties well understood that mechanics are not in this universe. The mechanics hours, mechanics work, is not the type of work, not the type of people that are covered by the decree and are excluded for purposes of figuring out what the sort of seniority rights of people who did get benefits in the 1989 stipulation would have. It also tells us that people understood and knew that mechanics were on the radar screen, at least as of 1989. We submit, although the district court felt it didn't have to deal with the question, because it found there was no violation with regard to mechanics, we submit that the 1989 stipulation and the general release does in fact release all claims because it was dealing with claims of shortages. And it refers to mechanics. It shows that people have this on the radar screen and excluded them with respect to the types of people and benefits that the consent decree was addressing. We also say that this stipulation was negotiated and it was written, it was drafted by class counsel. That's set out in our SCR, that's the Supplemental Excerpt of Record, at page 166 to 167. It was subject to the extraordinary due process safeguards that these types of class settlements provide. We had a fairness hearing. We had a notice that went out to everybody. They had an opportunity to file objections. The court had a preliminary review on the fairness before the notice went out. And then after the fairness hearing. This is all in front of the same judge, right? This is all in front of the same judge. And we had approval and we had – what did the defendants get? We got basically one thing out of it, the general release. That was the benefit of our bargain. That was the quid pro quo. And what is the value of a general release? It's a common value in any settlement. It said specifically that we are releasing now the risks of known and unknown claims. It's the risks of either dealing with disputes about the extent of known claims or dealing about the disputes of unknown claims. And that is exactly the purpose of a general release. Let me also say that the case that we cite at Bray, Transportation v. Coopers and Library, is right on point. There the Ninth Circuit held at 760 F. Second at page 1444. And I quote, it's a case dealing with where, quote, the precise amount of shortfall is unknown. The court found that the general release is still valid where the issue and dispute that was being resolved dealt with, quote, claims as to the net worth in dispute and contemplated, close quote. That is our case. The 1989 claims dealt with disputes about the claim of shortages with regard to the registration of class members. Those claims arose approximately a year after a letter from Dennis Gladwell, who's in the record, who's attorney for PMA, dated November 12, 1987, in which he lists virtually all of the issues that plaintiffs now raise in their contempt motion. He talked about the fact that the 1985 registration that there was a shortage and that there were additional 19 appeals that were all men that ended up getting granted. Does this letter talk about the mechanics? It does not talk about the mechanics. There is no mention whatsoever up until the 1989 stipulation with regard to mechanics because we submit it shows that the mechanics were never considered by anybody to be in this universe that we're talking about as to the scope of the class, the scope of the consent decree. The letter talks about all of the other claims that the plaintiffs have and says we're not counting these, we're not going to count this. Plaintiffs have notice. Plaintiffs says, well, you know, and they say this directly in their reply brief. They say, you know, we consider those things to be de minimis and it's only the cumulative effect. Do they consider the mechanics de minimis? No, no. Everything but mechanics. They consider the 1985, thank you for the clarification, they consider the 1985 shortage, they considered the Bauer group of additional male registrations together, these two together to be inadequate to establish a violation or the way they put it is to defeat substantial compliance. They say that it's only the cumulative effect on top of mechanics and everything else. Well, they knew about these violations from the Gladwell letter, the PMA attorney letter of 1987. They had these additional shortages that they brought suit on in 1989. As a result of that suit, they had 160 people registered. There's the accumulation. And that was in that context of the accumulation that they got the release. Finally, if we could. Well, you're over on your time, so just bring it to a close. Yeah. Thank you. There is the possibility of a rescission here is not present. It's completely impractical. We cannot just airbrush out the 160 people from the waterfront who got registered under the 1989 stipulation. And the law doesn't allow for a partial rescission for the reasons in the case law that we cited. Thank you very much for your attention. Thank you. You may proceed. Thank you. I'd like to respond to a couple of things that came up in opposing counsel's argument. First of all, to deal with the question of whether there's an ambiguity here. We submit there's not an ambiguity. And when you look at the question of ambiguity, you have to look to see whether there is a reasonable interpretation of the consent decree within its four corners that creates that ambiguity. And if it's not there within the four corners, it's not something that would create the ambiguity. And the Armour case said that when you do that analysis, you look at the plain, natural meaning of the words in the consent decree. And when you do that, paragraph 12 makes it extremely clear that all registrations are to be considered no matter how the people came in, whether it was by new registration, transfer, or any other procedure, that that is an extremely clear, unambiguous provision. Moreover, paragraph 19, there was some indication that paragraph 19 does not really incorporate the definitions from the collective bargaining agreement. I submit that's absolutely incorrect. It states that the provisions of the relative collective bargaining agreements shall apply fully to this decree and implementation thereof, with the exception of those provisions that conflict with the goals and timetables. And, of course, the goals and timetables are a modification of the normal rules for registration. That's what the exception refers to. Otherwise, it is specifically incorporating the terms of the collective bargaining agreement, and that collective bargaining agreement has a definition of longshoremen at section 1.91, which says the term longshoremen, as used herein, shall mean any employee working under this contract document. And then in section 1, it has a laundry list of who is working under this contract document, and sections 1.7 and 1.71, admitted by the person most knowledgeable, are mechanics working under this document. Falling within the term longshoremen, that term longshoremen has been written by paragraph 19 into the consent decree. Would you please respond to the 1987 letter relative to the 1989 decree? Well, there are two 1987 letters. You're talking about the recession letter? You're talking about the letter making representations? Yes. Yes. In that letter, it's our position that there are two material misrepresentations. One has to do with the mechanics. It purports in that letter to be a chronological picture of where we are. It's intended to lay out to us what the facts are, and they're the master of the facts. They're the keeper of the information, and the consent decree puts an obligation on them to communicate that to us. I guess, is there any complaint in the letter about the mechanics not meeting their goals? There's no indication whether the mechanics are being counted or not. Our assumption was they were being counted in the numbers that he was giving us. There's nothing in there that says we're giving you these numbers for the 1985 registrations. When we're giving you these numbers for the 1987 registrations, they don't include mechanics. We assume they did, as was required by paragraph 12 in the consent decree. Well, if that's the case, doesn't that sort of go back to where the district judge came to the conclusion that the parties were not on the same line and page regarding their intent? Right, which brings us back to the Armour case, where the United States Supreme Court made it very clear that the intent of the parties is not the dominant issue when you're interpreting a consent decree, and it can't be. You have to look at the document as a document that has a life of its own, starting from the time that it's signed by the judge, and the parties to abide by that, because if one party were to say, well, my intent in entering into this was something different, especially the party that must be doing affirmative actions to implement it. And so I'm only going to implement it this way because that's what I intended. And you can't go back to the document and look at its plain language to show that, in fact, that's not what the other side intended it to be, and in fact not what the language indicates clearly it should be. Then you have lawlessness. You don't have a consent decree. You have a document that has no real effect on changing behavior, as a consent decree is meant to do, and it destroys the benefit of the bargain for the party that did have the intent to, in this case, to include the mechanic registrations. So I submit that that's a totally irrelevant consideration, and the district court should not have considered it in this case. There's some discussion, and Judge Bouchever asked about the hiring of women into the mechanics position, and I think there's a little red herring out there that this case looked at all longshore worker positions as a whole. It didn't parse them out job category by job category. We didn't try to prove that there was discrimination in the hiring of mechanics, and in the relief we didn't segregate out mechanics. We didn't segregate out sweepers. We didn't segregate all the other job classifications. Some of those job classifications take sweeper, for example. There's no reason women can't do those at the same percent as well as men can. You would think that the labor pool would be 50 percent. Okay, for mechanics it's 5 percent. Well, what are the goals that are here? The ultimate goal is 20 percent. So there are some categories where there are likely to be more women. There are some categories that are likely to be fewer. But what we did is we lumped them all together to give flexibility to PMA and the unions as to who would be registered, and we agreed to a compromise figure of 20 percent. Well, there's nothing that requires mechanics to be masculine, isn't that right? None whatsoever, Your Honor, and if there were women who became mechanics, they would have been counted towards the goal like any other registered longshoreman. And just in closing, I ask myself, what could we have done to make this more clear in the consent decree? And we tried to make it extremely clear. Paragraph 12 is there to show that it's to be all-inclusive. Paragraph 19 is there to give some definitions and law of the workplace that had developed over the years and incorporate that into the consent decree. All of those support mechanics being counted as a part of the goals. What more could defendants have done? They could have, at the bargaining table, put an exception in there. Right in 1982 when this was being negotiated, there was an arbitration over whether mechanics were longshoremen, and the finding was that they were. They were very aware of that, sophisticated clients. Is that part of the record? Yes, it is. All right. It is. And Mr. Gladwell says, well, I didn't know. Well, his clients knew. He has sophisticated clients. We have three parties over here who know the court backwards and forwards, two unions and PMA. They knew they could have gotten an exception into the consent decree. They did not. They're trying to get this court to write one in, and that's extremely inappropriate. We're entitled, bottom line, to bargain to the benefit of our bargain in entering into that consent decree. We bargained for all registrations, no matter how they took place, to be counted towards the goals. PMA didn't do it. The unions didn't do it. We don't think they did it in bad faith. We think they didn't realize that that was a part of the consent decree. We brought it to their attention. We attempt to resolve it. We didn't resolve it. We litigated it. It's now before this court, and we trust that you will appropriately find that the mechanics should have been counted. All right. Thank you, both counsel. This court will be temporarily in recess. As I indicated, we'll take a short recess to reconstitute the panel.
judges: Boochever, Callahan, Magill